IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PEMEX EXPLORACIÓN Y PRODUCCIÓN,  §
individually and as assignee of  §
AGE REFINING, INC., FLINT HILLS  §
RESOURCES, L.P., and VALERO      §
MARKETING AND SUPPLY COMPANY,    §
                                 §
              Plaintiffs,         §
                                 §
v.                               §
                                 §
MURPHY ENERGY CORPORATION; HIGH  §
SIERRA CRUDE OIL & MARKETING,    §
LLC, successor to PETRO SOURCE   §
PARTNERS, L.P.; BIG STAR         §
GATHERING LTD, L.L.P.; ST. JAMES §
ENERGY OPERATING, INC.; F&M      §     CIVIL ACTION NO. H-12-1081
TRANSPORTATION, INC.; PLAINS     §
MARKETING L.P.; SUPERIOR CRUDE   §
GATHERING, INC.; CONOCOPHILLIPS  §
CO.; FR MIDSTREAM TRANSPORT L.P. §
f/k/a TEXSTAR MIDSTREAM          §
TRANSPORT, LLC; MARATHON         §
PETROLEUM CO., L.P. f/k/a        §
MARATHON PETROLEUM CO., LLC;     §
SHELL CHEMICAL L.P. d/b/a SHELL  §
CHEMICAL CO.; SHELL TRADING US   §
CO. ("STUSCO"); and SUNOCO       §
PARTNERS MARKETING & TERMINALS,  §
L.P.,                            §
                                 §
              Defendants.         §

## MEMORANDUM OPINION AND ORDER

Plaintiff, PEMEX Exploración y Producción ("PEP"), has brought suit against multiple defendants for claims arising from sales in the United States of natural gas condensate allegedly stolen from PEP in Mexico.  On June 8, 2012, the court held a scheduling conference and issued a Memorandum Opinion and Order (Docket Entry

No. 106) granting three motions to dismiss to the extent that they sought dismissal of claims that PEP had asserted under Mexican law for illegal possession and use of Mexican sovereign property: (1) Defendant Sunoco Partners Marketing & Terminals, L.P.'s ("Sunoco") Motion to Dismiss in Lieu of Answer or Alternatively to Sever (Docket Entry No. 17), (2) Defendants Shell Trading US Company ("STUSCO") and Shell Chemical LP's ("Shell Chemical") Motion to Dismiss (Docket Entry No. 31), and (3) Defendant FR Midstream Transport, LP's ("FR Midstream") Fed. R. Civ. P. 12 Motions to Dismiss, Joinder in All Other Defendants' Fed. R. Civ. P. 12 Motions to Dismiss, and, in the Alternative, Fed. R. Civ. P. 12(e) Motion for a More Definite Statement (Docket Entry No. 43).

For reasons stated on the record at the June 8, 2012, scheduling conference, defendants waived all Rule 12(b) arguments except standing asserted in the following motions to dismiss:[1] Plains Marketing, L.P.'s ("Plains") Motion to Dismiss (Docket Entry No. 12); Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss (Docket Entry No. 31); Defendant Murphy Energy Corporation's ("Murphy Energy") Motion to Dismiss Original Complaint (Docket Entry No. 36); Defendants Big Star Gathering Ltd L.L.P. ("Big Star") and Saint James Energy Operating, Inc.'s ("St. James") Motion to Dismiss or, in the Alternative, Motion for

---

[1] See Hearing Minutes and Order, Docket Entry No. 107.

More Definite Statement (Docket Entry No. 44); Defendant F&M
Transportation, Inc.'s Motion to Dismiss (Docket Entry No. 66);
Defendant High Sierra Crude Oil & Marketing, LLC's ("High Sierra")
Motion to Dismiss (Docket Entry No. 76); and Defendant Superior
Crude Gathering, Inc.'s Motion to Dismiss (Docket Entry No. 77).
Thus, to the extent that these motions seek dismissal for lack of
standing, they remain pending.

Also pending are the following motions seeking leave to
designate responsible third parties:  Defendant FR Midstream
Transport, LP's Motion for Leave to Designate Responsible Third
Parties (Docket Entry No. 120); Plains Marketing, L.P.'s Motion for
Leave to Designate Responsible Third Parties (Docket Entry
No. 121); Defendants  Shell Chemical LP and Shell Trading US
Company's Motion for Leave to Designate Responsible Third Parties
(Docket Entry No. 123); Defendant Superior Crude Gathering, Inc.'s
Motion to Join in Defendants Shell Chemical LP and Shell Trading US
Company's Motion for Leave to Designate Responsible Third Parties
(Docket Entry No. 124); High Sierra Crude Oil & Marketing, LLC's
Motion to Join Defendants Shell Chemical LP and Shell Trading US
Company's Motion for Leave to Designate Responsible Third Parties
(Docket Entry No. 125); Joint Motion for Leave to Designate
Responsible Third Parties filed by Sunoco Partners Marketing &
Terminals L.P., ConocoPhillips Co., and Marathon Petroleum Company,
L.P. ("Marathon") (Docket Entry No. 127); Defendant Murphy Energy
Corporation's Motion to Join the Shell Defendants' Motion for Leave

to Designate Responsible Third Parties (Docket Entry No. 129);
Defendant F&M Transportation, Inc.'s Motion for Leave to Designate
Responsible Third Parties and Motion to Join in Defendants Shell
Chemical LP and Shell Trading US Company's Motion for Leave to
Designate Responsible Third Parties (Docket Entry No. 130); and
Defendants Big Star Gathering Ltd., LLP and Saint James Operating,
Inc.'s Motion to Join in Plains Marketing, L.P.'s Motion for Leave
to Designate Responsible Third Parties (Docket Entry No. 132).

For the reasons explained below, the motions to dismiss for
lack of standing will be granted; the motions to designate
responsible third-parties for PEP's indirect, assigned claims will
be declared moot; and the motions to designate responsible third
parties for PEP's direct claims for conversion, equitable relief,
constructive trust, unjust enrichment, and money had and received
will be granted.

## I.  <u>Background</u>

This is the third action that PEP has filed in this court
based on allegations of "trade in the United States of natural gas
condensate stolen in Mexico."[2]  PEP filed the first of the two
previous actions in June of 2010 (the so-called BASF-action, 4:10-
cv-1997), and the second in May of 2011 (the so-called Big Star
action, 4:11-cv-2019).  On October 4, 2011, the court consolidated

---

[2]PEP's Original Complaint, Docket Entry No. 1, p. 2 ¶ 1.

the two previously filed actions for all purposes.[3] By Memorandum Order and Opinion dated April 12, 2012, the court denied PEP's motion for leave to file a fourth amended complaint in the BASF action, but granted PEP's motion for leave to file a first amended complaint in the Big Star action for the purpose of adding three new defendants (Plains Marketing, L.P., St. James Energy Operating, and RGV Energy Partners, L.L.C.).[4]  On the same day, i.e., April 10, 2012, PEP filed this third action.

## II.  Motions to Dismiss for Lack of Standing

Defendants Plains, STUSCO, Murphy Energy, F&M Transportation, Big Star, St. James, High Sierra, and Superior Crude argue that the indirect claims that PEP has asserted as assignee of AGE Refining, Inc. ("AGE"), Flint Hills Resources, Inc. ("Flint Hills"), and/or Valero Marketing and Supply Company ("Valero") for fraud, breach of warranty, and breach of contract are subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction because PEP lacks standing to assert these claims.

## A.   Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction tests the court's statutory or

---

[3]Memorandum Opinion and Order, Docket Entry No. 287 in Civil Action 4:10-cv-1997.

[4]Docket Entry No. 377 in Civil Action 4:10-cv-1997.

constitutional power to adjudicate the case.  Home Builders Association of Mississippi, Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S.Ct. 2665 (2002).  In examining a Rule 12(b)(1) motion, the district court can consider matters of fact that may be in dispute.

> Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

Id. (citing Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)).  Dismissal on jurisdictional grounds alone is not a dismissal on the merits.  Id. (citing Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

## B.   Applicable Law

Standing questions "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 95 S.Ct. 2197, 2205 (1975).  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136 (1992).  "Standing requires, at a minimum, three elements:  injury in fact, a 'fairly traceable' causal link between that injury and the defendant's conduct, and the likelihood

that the injury will be 'redressed by a favorable decision.'"
Cadle Co. v. Neubauer, 562 F.3d 369, 371 (5th Cir. 2009) (quoting
Lujan, 112 S.Ct. at 2136). "A defect in Article III standing is a
defect in subject-matter jurisdiction." Id. at 374.  See also
Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2
(5th Cir. 2011) ("dismissal for lack of constitutional standing .
. . should be granted under Rule 12(b)(1)").  "Standing is a
question of law" for the court to decide.  Friends of St. Francis
Xavier Cabrini Church v. Federal Emergency Management Agency,
658 F.3d 460, 466 (5th Cir. 2011).  In deciding questions of law,
including standing, involving claims based on state law, applicable
state law governs.  See Crocker v. Federal Deposit Insurance Corp.,
826 F.2d 347, 349 (5th Cir. 1987), cert. denied, 108 S.Ct. 1075
(1988).

        "In Texas, the standing doctrine requires a concrete injury to
the plaintiff and a real controversy between the parties that will
be resolved by the court."  Heckman v. Williamson County,
369 S.W.3d 137, 154 (Tex. 2012).  Because the Texas test for
standing parallels the federal test for Article III standing, Texas
courts "turn for guidance to precedent from the U.S. Supreme Court,
which has elaborated on standing's three elements."  Id.  "The
standing inquiry 'requires careful judicial examination of a
complaint's allegations to ascertain whether the particular
plaintiff is entitled to an adjudication of the particular claims

asserted.'"  Id. at 156 (quoting Allen v. Wright, 104 S.Ct. 3315, 3325 (1984)).

Subject to limited exceptions, Texas law allows assignees to assert assigned claims.  See State Farm Fire & Casualty Co. v. Gandy, 925 S.W.2d 696, 705-07 (Tex. 1996) (acknowledging that causes of action in Texas are freely assignable).  However, the only injury sufficient to support an assignee's standing to assert an assigned claim is an injury suffered by the assignor, and that injury must satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-in-fact that is causally traceable to a named defendant and likely to be redressed by the court action.  See Gulf Insurance Co. v. Burns Motors, Inc., 22 S.W.3d 417, 420 (Tex. 2000) (citing Jackson v. Thweatt, 883 S.W.2d 171, 174 (Tex. 1994) (recognizing that assignees stand in assignors' shoes and may assert only those rights that the assignors' themselves could assert)).  See also Southwestern Bell Telephone Co. v. Marketing on Hold Inc., 308 S.W.3d 909, 916 (Tex. 2010) (a holder of contractually valid assignments steps "into the shoes of the claim-holders and is considered under the law to have suffered the same injury as the assignors and have the same ability to pursue the claims").  PEP acknowledges these requirements for constitutional standing by stating that "the issue is whether there is a case or controversy

arising out of [the assignors'] purchase of millions of dollars of stolen gas condensate from the defendants."[5]

## C.   PEP Lacks Standing to Assert Assigned Claims

Defendants Plains, STUSCO, Murphy Energy, F&M Transportation, Big Star, St. James, High Sierra, and Superior Crude argue that PEP lacks standing to assert indirect, assigned claims for fraud, breach of warranty, and breach of contract because the assignors, AGE, Flint Hills, and/or Valero, have not suffered an injury-in-fact traceable to these defendants. Alternatively, these defendants argue that the assignments to PEP are void under Texas law as against public policy. For the reasons explained below, the court concludes that PEP lacks standing to assert the assigned claims because PEP has failed to show that the assignors suffered an injury-in-fact traceable to these defendants. Alternatively the court concludes that PEP lacks standing to assert the assigned claims because the assignments are void under Texas law.

---

[5]See PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, p. 4; PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 7; PEP's Opposition to Murphy Energy Corporation's Motion to Dismiss, Docket Entry No. 72, p. 5; Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 4.

1.   Assignors Suffered No Injury-In-Fact Causally Traceable
     to a Named Defendant

Asserting that PEP has made only conclusory allegations of
entitlement to unspecified damages for the assigned claims, Plains
argues that PEP has failed to show that the assignors suffered an
injury-in-fact.   Citing Rivera v. Wyeth-Ayerst Laboratories,
283 F.3d 315 (5th Cir. 2002), Plains states that in that case

> a plaintiff asserted that a drug she had taken was
> defective, but that she herself had not suffered any
> consequences of the alleged defect. Id. at 317. The
> court explained that the plaintiff "paid for an effective
> pain killer, and she received just that—the benefit of
> her bargain." Id. at 320.
>
> That is the situation here: Valero (and allegedly
> AGE) purchased oil from Plains, received the amount of
> oil promised, and used that oil. The value as warranted
> and received was the same. There is no allegation that
> Valero or AGE lost any money, lost the value of any oil,
> were required to turn over the oil to a rightful owner,
> were unable to sell the refined oil for the expected
> value, or received oil that was less useful than
> promised. . .
>
> PEP/Valero has alleged that Plains breached
> contracts and warranties by failing to deliver good
> title, but a theoretical title defect does not substitute
> for an actual injury. . .[6]

Plains also argues that AGE and Valero will never suffer any
damages, and that AGE's and Valero's promises to reimburse PEP do
not confer standing.[7]  Plains concludes by asserting:

> The fact that Valero and AGE have settled the only
> potential title challenge against them for $0 while
> retaining and making full use of the oil allegedly

---

[6]Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry
No. 12, p. 6.

[7]Id. at 7-9.

purchased from Plains dooms PEP/Valero's claims.
PEP/Valero cannot show an injury, and it therefore does
not have standing. . .[8]

The other defendants all make the same or virtually the same

arguments regarding the assigned claims asserted against them.[9]

PEP responds that the injury-in-fact needed to establish

constitutional standing is satisfied merely by the assignors'

involvement in this matter.[10]  Alternatively, PEP argues that all

---

[8]Id. at 10.

[9]See Defendants Shell Trading US Company and Shell Chemical
LP's Motion to Dismiss, Docket Entry No. 31, pp. 5-10 (arguing that
assigned claims fail for lack of injury); Memorandum of Law in
Support of Defendant Murphy Energy Corporation's Motion to Dismiss
Original Complaint, Docket Entry No. 37, pp. 5-9 (arguing that
assigned claims fail for lack of injury); Defendants Big Star
Gathering Ltd. L.L.P. and Saint James Energy Operating, Inc.'s
Motion to Dismiss or, in the Alternative, Motion for More Definite
Statement, Docket Entry No. 44, pp. 15-18 (arguing that assigned
claims fail for lack of injury); Defendant F&M Transportation,
Inc.'s Motion to Dismiss, Docket Entry No. 66, pp. 1-2 (arguing
that PEP has no standing to bring the assigned claims, that the
breach of contract and breach of warranty claims fail for lack of
injury, and joining the motions to dismiss filed by all other
defendants); Defendant High Sierra Crude Oil & Marketing, LLC's
Motion to Dismiss, Docket Entry No. 76, pp. 1, 3-4 (arguing that
PEP has no standing to bring the assigned claims, that the breach
of contract and breach of warranty claims fail for lack of injury,
and joining the motions to dismiss filed by all other defendants);
Defendant Superior Crude Gathering, Inc.'s Motion to Dismiss,
Docket Entry No. 77, pp. 1, 3-4 (arguing that PEP has no standing
to bring the assigned claims, that the breach of contract and
breach of warranty claims fail for lack of injury, and joining the
motions to dismiss filed by all other defendants).

[10]See PEP's Opposition to Plains Marketing, L.P.'s Motion to
Dismiss, Docket Entry No. 70, p. 4; PEP's Opposition to Shell
Chemical LP and Shell Trading US Company's Motion to Dismiss,
Docket Entry No. 71, p. 7; PEP's Opposition to Murphy Energy
Corporation's Motion to Dismiss, Docket Entry No. 72, p. 5; Pemex
Exploración y Producción's Opposition to Big Star Gathering LTD
L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss
(continued...)

of the assignors -- AGE, Flint Hills, and Valero -- promised to reimburse PEP for any stolen condensate they purchased, and that the assignments all follow the same basic structure:

- The assignors agreed to make PEP whole for the stolen condensate they purchased and used, and

- PEP covenanted to collect on that promise solely through the assignments.[11]

PEP argues that "[t]hose promises are damage supporting recovery under the assignments, despite PEP's promises to limit how it recovers on those promises."[12]

----

[10](...continued)
or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 4.

[11]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, p. 5; PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 8; PEP's Opposition to Murphy Energy Corporation's Motion to Dismiss, Docket Entry No. 72, p. 6; Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 5.

[12]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, p. 5 (citing Valero/PEP/PR Settlement Agreement and AGE/PEP Settlement Agreement, Exhibits 1 and 2 to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 12, and Valero/PEP/PR Assignment Agreement and Flint Hills/PEP Settlement Agreement, Exhibits C and D to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31); PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 7 (citing Valero/PEP/PR Assignment Agreement and Flint Hills/PEP Settlement Agreement, Exhibits C and D to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31); PEP's Opposition to Murphy Energy Corporation's Motion to Dismiss, Docket Entry No. 72, pp. 5-6 (citing Valero/PEP/PR Settlement Agreement, Exhibit 1 to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 12, and AGE/PEP Settlement Agreement and Flint
(continued...)

    (a)  Assignors' Involvement in this Matter Does Not Constitute Injury-In-Fact

PEP's argument that the threshold for constitutional standing is met by the assignors' involvement in this matter lacks merit because PEP has neither alleged nor argued that the assigned claims for fraud, breach of warranty, and/or breach of contract asserted in this action seek redress for injuries that the assignors suffered as a result of their involvement in this matter, or that any such injury is traceable to any of the named defendants or redressable by the claims asserted in this action. Instead, PEP candidly states that "PEP is not bringing the assigned claims to recover for Valero's [AGE's] [Flint Hills'] embarrassment at having been involved in the injuring of a major trading partner. PEP brings the assigned claims to recover the value of the goods sold to the assignors."[13]  Nor has PEP cited any authority in support of its argument that the assignors' mere involvement in this action

---

[12](...continued)
Hills/PEP Settlement Agreement, Exhibits B and D to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31); Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 5.

[13]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, pp. 4-5; PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 7; PEP's Opposition to Murphy Energy Corporation's Motion to Dismiss, Docket Entry No. 72, p. 5; Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 4.

constitutes an injury-in-fact sufficient to establish standing to assert assigned claims for fraud, breach of warranty, and/or breach of contract. Accordingly, the court concludes that the assignors' involvement in this matter is not an injury-in-fact capable of supporting PEP's assertion of constitutional standing to allege the assigned claims for fraud, breach of warranty, and breach of contract at issue in this action.

> (b)  Assignors' Promises to Reimburse PEP Do Not Constitute Injury-In-Fact

PEP argues that the promises to reimburse PEP for any stolen gas condensate that the assignors purchased and/or received are "damage supporting recovery under the assignments, despite PEP's promises to limit how it recovers on those promises." PEP explains that the assignors' promises to reimburse are damages supporting recovery under the assignments "because a covenant not to collect is a contract and not a release of the underlying liability."[14] Citing National Union Fire Insurance Co. of Pittsburgh Pennsylvania v. Puget Plastics Corp., 649 F.Supp.2d 613 (S.D. Tex. 2009), aff'd 454 Fed. Appx. 291 (5th Cir. November 28, 2011). PEP states:

---

[14]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, p. 4; PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 8; PEP's Opposition to Murphy Energy Corporation's Motion to Dismiss, Docket Entry No. 72, p. 6; Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 6.

Some jurisdictions, like Texas, hold that a covenant not to execute is merely a contract, rather than a release, such that the underlying tort liability remains. . . As long as there is no improper collusion (the defendants' next argument), the covenant does not vitiate the underlying promise to make the plaintiff whole. . . *See also Ard v. Gemini Exploration Co.*, 894 S.W.2d 11, 15 (Tex. App.--Houston [14th Dist.] 1994, pet. denied) ("A covenant not to execute is a contract rather than a release . . . Therefore, the fact that the indemnitee, Resolve, will not have to pay any damages does not eradicate Resolve's liability, nor does it eradicate an indemnitor's or an insurer's duty to pay.").[15]

The cases on which PEP relies are distinguishable and inapposite because they did not identify a mere promise to reimburse as an injury sufficient to establish constitutional standing. In fact, standing was not at issue in either of the two cases cited by PEP. Instead, each of the cases cited by PEP involved assignments from assignors who had suffered actual injuries in the form of judgments that imposed liability on the assignors. See Puget Plastics, 649 F.Supp.2d at 617, 619, 624-26 (defendant adjudged liable by trial court assigned rights to an insurance policy, and accepted a covenant not to execute except as to the assigned insurance); Ard, 894 S.W.2d at 15 (agreement at issue was covenant not to execute judgments that imposed liability on assignors). PEP's argument that promises made by AGE, Flint

---

[15]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, p. 6; PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 8; PEP's Opposition to Murphy Energy Corporation's Motion to Dismiss, Docket Entry No. 72, pp. 6-7; Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 6.

Hills, and Valero to reimburse PEP for stolen gas condensate constitute injuries-in-fact lacks merit because instead of establishing that the assignors suffered an injury by having admitted to liability, or having been held liable for purchasing and/or receiving stolen gas condensate, the agreements establish that the assignors (1) deny liability for having purchased and/or received stolen gas condensate, and (2) will not be held liable for purchasing and/or receiving stolen gas condensate because in addition to agreeing not to seek reimbursement from the assignors, PEP has agreed not to pursue its claims against the assignors.

The agreements that PEP has entered with each of the three assignors contains the following paragraph pursuant to which the parties agree that the assignors have not admitted liability:

> The parties agree that the Agreement does not constitute any admission of liability or wrongdoing by any party and further agree that the Agreement does not constitute any admission that any hydrocarbon product received by Valero [AGE] [Flint Hills] was stolen or wrongfully obtained or that Valero [AGE] [Flint Hills] does not have or did not obtain proper title to the product.[16]

Each of the agreements also either releases the assignors from being held liable or states that PEP agrees not to pursue its claims against the assignors, meaning that the assignors have not only denied liability for purchasing and/or receiving stolen gas

---

[16]Valero/PEP/PR Settlement Agreement, and AGE/PEP Settlement Agreement, Exhibits 1 and 2 to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 12, p. 2, ¶ 6; Flint Hills/PEP Settlement Agreement, Exhibit D to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31, p. 2, ¶ 6.

condensate, but also face no threat of being held liable for purchasing and/or receiving stolen gas condensate. Absent liability or imminent threat of being held liable for having purchased and/or received stolen gas condensate, the assigners have not suffered an injury-in-fact arising from their purchase and/or receipt of stolen gas condensate.

The Flint Hills agreement states that Flint Hills' assignment of its claims to PEP

> (a) constitutes full and final reimbursement to PEP for any claims relating to any amounts of hydrocarbons that PEP alleges or may in the future allege Flint Hills received that were stolen in Mexico or the United States, and that (b) PEP covenants that in return for the assignment of Flint Hills's claims, and except as necessary to effectuate the Assignments, PEP fully releases and waives any and all claims relating to the subject hydrocarbons that it may have against Flint Hills.[17]

Because the Flint Hills' agreement states that "PEP fully releases and waives any and all claims relating to the subject hydrocarbons that it may have against Flint Hills,"[18] Flint Hills faces no threat of being held liable for purchasing and/or receiving stolen condensate. Moreover, even if Flint Hills could be held liable for purchasing and/or receiving stolen gas condensate, because Flint Hills' assignment of claims to PEP "constitutes full and final reimbursement to PEP for any claims relating to any amounts of

---

[17]Flint Hills/PEP Settlement Agreement, Exhibit D to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31, p. 2, ¶¶ 8b and 8d.

[18]Id.

hydrocarbons that PEP alleges or may in the future allege Flint Hills received that were stolen,"[19]  Flint Hills faces no threat of ever having to pay PEP damages for having purchased and/or received stolen gas condensate.  Because Flint Hills has not been held liable and faces no threat of being held liable to PEP for purchasing and/or receiving stolen gas condensate, and because even if Flint Hills could be held liable for such conduct, Flint Hills would not have to pay damages or otherwise reimburse PEP for the value of the stolen gas condensate, PEP lacks standing to assert Flint Hills' assigned claims because Flint Hills has not suffered an injury-in-fact arising from its purchase and/or receipt of stolen gas condensate.

The AGE agreement states that

(a) AGE assigns to PEP any third party claims, including, but not limited to, claims for contribution or indemnity, breach of warranty of title and breach of contract, AGE has against any third party for the matters covered by the Release (see below) [collectively, the "Assignments"]. . .

(b) AGE and PEP intend that PEP can utilize the Assignments to collect PEP's damages.  Subject to the terms and only for the purposes of this Agreement, AGE agrees to reimburse PEP for any amounts of hydrocarbons that AGE received that were stolen in Mexico; provided however, PEP covenants that it will seek payment or satisfaction of AGE's promise exclusively through the Assignments and PEP further covenants not to sue, collect, file a claim against AGE or in the Bankruptcy Case or Liquidating Trust, or otherwise act against AGE in any manner, except PEP may use the Assignments against third persons.  The intention is that AGE will not be subject to any monetary payments or liability to PEP. . .

---

[19]Id.

. . .

> (d) Upon approval of this Settlement Agreement by the Bankruptcy Court, PEP will withdraw with prejudice its Proof of Claim filed in the Bankruptcy Case.  PEP further agrees not to file any future claim or demand for payment in the Bankruptcy Case or with the Liquidating Trust established in the Bankruptcy Case.[20]

Because the AGE agreement states that PEP "covenants not to sue, collect, file a claim against AGE in the Bankruptcy Case or Liquidating Trust, or otherwise act against AGE in any manner," that "[t]he intention is that AGE will not be subject to any monetary payments or liability to PEP," that "PEP will withdraw with prejudice its Proof of Claim filed in the Bankruptcy Case," and that "PEP further agrees not to file any future claim or demand for payment in the Bankruptcy Case or with the Liquidating Trust established in the Bankruptcy Case," AGE faces no imminent threat of being held liable for purchasing and/or receiving stolen condensate.  Consequently, AGE faces no imminent threat of ever having to pay PEP damages for having purchased and/or received stolen gas condensate.  Because AGE has not been held liable and faces no threat of being held liable to PEP for purchasing and/or receiving stolen gas condensate, AGE has not suffered an injury-in-fact arising from its purchase and/or receipt of stolen gas condensate capable of supporting PEP's standing to assert the assigned claims.

---

[20]AGE/PEP Settlement Agreement, Exhibit B to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31, p. 2, ¶¶ 8a, 8b and 8d.

As additional evidence that AGE has not suffered an injury-in-fact capable of supporting PEP's standing to assert AGE's assigned claims, defendants point to the joint motion for approval of the settlement agreement submitted to the AGE Bankruptcy Court on February 2, 2012.[21]  The motion to approve the settlement agreement that PEP and the Liquidating Trustee filed jointly states in pertinent part:

> 12. PEP's attorneys have alleged that they can trace between $90 and $100 million dollars of stolen condensate which was ultimately sold to the AGE refinery.  Such stolen condensate was then refined by AGE and sold to third parties. . . AGE bought the stolen condensate from its regular suppliers.  Nonetheless, PEP has alleged that potential claims exist against AGE by PEP for at least $90 to $100 million dollars and possibly as much as $120 million dollars.  As the seller had no title to pass to AGE, AGE is allegedly not able to avail itself of any sort of "good faith" purchaser or bona fide purchaser for value type defense.
>
> 13.   In turn, AGE would have a claim for recourse against the seller(s) of this stolen crude if it were found liable to PEP.  **However, since AGE, at this point, has not suffered any damages, such claim is currently not ripe for assertion. . .**[22]

PEP has not submitted any evidence showing that since the joint motion was filed on February 2, 2012, AGE has been held liable to PEP or suffered any damages.  Absent such evidence the statements contained in ¶ 13 of the joint motion that "AGE would have a claim

---

[21]Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31, p. 11.

[22]Joint Motion Under Bankruptcy Rule 9019 to Approve Settlement Agreement Pemex Exploración y Producción, Exhibit A to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31, p. 4, ¶¶ 12-13 (emphasis added).

for recourse against the seller(s) of . . . stolen crude if it were liable to PEP," but that "since AGE, at this point, has not suffered any damages, such claim is currently not ripe for assertion," corroborates the court's conclusion that AGE has not suffered an injury-in-fact capable of providing PEP standing to assert AGE's assigned claims.  Because PEP has not alleged or made any showing that AGE has been held liable and/or suffered any damages for purchasing and/or receiving stolen gas condensate, PEP has failed to show that AGE has suffered an injury-in-fact capable of providing PEP standing to assert AGE's assigned claims.  PEP's contention that AGE may eventually be held liable for purchasing and/or receiving stolen gas condensate "because a covenant not to collect is a contract and not a release of the underlying liability"[23] is not sufficient to establish PEP's standing to assert AGE's assigned claims because any injury that AGE may eventually suffer is not concrete, particularized, actual, or imminent but, instead, conjectural or hypothetical. See Lujan, 112 S.Ct. at 2136 (describing an "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical'").

---

[23]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, p. 4; PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 8; PEP's Opposition to Murphy Energy Corporation's Motion to Dismiss, Docket Entry No. 72, p. 6; Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 6.

PEP admits that its covenant to collect on the assignors' promises to reimburse PEP for purchasing and/or receiving stolen gas condensate solely through the assigned claims means that Flint Hills and the bankrupt AGE are making no payment.[24]   However, PEP argues that the assigned claims that it has alleged on behalf of Valero are distinguishable from those that it has alleged on behalf of Flint Hills and AGE because "Valero paid a very material sum in damages to PEP and was clearly damaged as a result."[25]

PEP's argument that by paying a very material sum in damages to PEP, Valero suffered an injury capable of establishing standing lacks merit because the Valero agreement that PEP cites in support of this argument required Valero to pay PEP $3,750,000.00[26] in order

_____

[24]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, p. 5 (acknowledging that "AGE is making no payment"); PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 8 (acknowledging "that Flint Hills and the bankruptcy AGE is making no payment"); Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 5 (acknowledging "that Flint Hills and the bankruptcy AGE is making no payment").

[25]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, p. 5 (citing Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 12, pp. 7-8 and Exhibit 1 attached thereto, Valero/PEP/PR Settlement Agreement); PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 8; Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 5.

[26]Valero/PEP/PR Settlement Agreement at ¶ 8.a, included in Exhibit 1 to Plains Marketing, L.P.'s Motion to Dismiss, Docket
(continued...)

"to satisfy solely the amount sold by Kemco to Valero starting with and to the fullest extent possible the amounts sold by Kemco directly to Valero."[27]  The agreement then provides that

> b.    Valero and PEP/PR intend that PEP/PR can utilize the assignments to collect damages that are not covered by the payment in paragraph 8.  It is therefore contemplated that (1) Valero agrees to reimburse PEP/PR for any amounts of hydrocarbons that Valero received that were stolen in Mexico other than as set forth in paragraph 8, and that (2) PEP/PR covenants that it will seek payment or satisfaction of Valero's promise exclusively through the assignment of Valero's claims and PEP/PR further covenants not to sue, collect, or otherwise act against Valero in any manner on Valero's promise to reimburse except through the assignments. . . The intention is that Valero will not be subject to further monetary payments to PEP/PR and that PEP/PR will have the right to recover through the assignments and on PEP/PR's direct claims to the fullest extent possible.[28]

Thus, the Valero agreement establishes that (1) Valero reimbursed PEP the sum of $3,750,000.00 for gas condensate purchased from Kemco Resources, Inc., an entity that is not a defendant in this action,[29] and (2) Valero did not assign its claims against Kemco to PEP.[30]  Because Valero has not assigned its claims against Kemco to

---

[26](...continued)
Entry No. 12.

[27]Id. ¶ 8.c.

[28]Id. ¶ 9.b.

[29]Id. ¶¶ 8a and 8c.

[30]Id. ¶ 9.a, stating:

In addition to the payment, Valero assigns to PEP/PR any third party claims, including, but not limited to, claims for contribution or indemnity, breach of warranty or title and breach of contract, Valero has against any
(continued...)

PEP, and because Kemco is not a defendant in this action, any injury that Valero suffered by reimbursing PEP for gas condensate purchased from Kemco is not an injury-in-fact capable of establishing PEP's standing to assert assigned claims against any of the defendants named in this action.

(c)   Conclusions as to Injury-in-Fact

PEP has neither alleged nor pointed to any evidence showing that the assigned claims asserted in this action seek damages for injuries-in-fact suffered by the assignors, or that any injuries-in-fact suffered by the assignors are traceable to a defendant named in this action.  Instead, PEP candidly admits that it "is not bringing the assigned claims to recover for Valero's [Flint Hills'] [AGE's] embarrassment at having been involved in the injuring of a major trading partner.  PEP brings the assigned claims to recover the value of the goods sold to the assignors."[31]  Missing from PEP's Original Complaint and/or responses to the pending motions to dismiss are factual allegations and/or evidence capable of establishing that the assignors -- as opposed to PEP -- suffered

---

[30](...continued)
third party other than Kemco or Kemco's insurers . . .

[31]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, pp. 4-5; PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 7; PEP's Opposition to Murphy Energy Corporation's Motion to Dismiss, Docket Entry No. 72, p. 5; Pemex Exploración y Producción's Opposition to Big Star Gathering LTD L.L.P. and Saint James Energy Operating, Inc.'s Motions to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 75, p. 4.

injury that would allow them to recover the value of goods that they purchased and/or received from any of the defendants named in this action.   Accordingly, PEP lacks standing to assert the assigned claims.   See Gulf Insurance, 22 S.W.3d at 420; Jackson, 883 S.W.2d at 174.

### 2.   Assignments of Third-Party Claims to PEP Are Invalid

Defendants Plains, STUSCO, Murphy Energy, F&M Transportation, High Sierra, and Superior Crude argue that the assignments to PEP of the indirect claims asserted in this action are void under Texas law as against public policy because a settling defendant cannot attempt to preserve its contribution rights by assigning those rights to the plaintiff, and because they distort the litigation.[32]

#### (a)   Assignments Are Invalid Attempts to Preserve Contribution Rights Against Non-Settling Defendants

Citing Jackson v. Freightliner Corp., 938 F.2d 40, 41-42 (5th Cir. 1991), and Beech Aircraft Corp. v. Jinkins, 739 S.W.2d 19, 22 (Tex. 1987), defendants Plains, STUSCO, Murphy Energy, F&M

---

[32]Defendants Big Star and Saint James argue that the AGE assignments are invalid for various reasons arising from AGE's confirmed bankruptcy plan, e.g., because AGE's Liquidating Trustee did not have an interest in the assigned claims, the AGE assignment is barred by the res judicata effect of AGE's confirmed bankruptcy plan, the doctrine of judicial estoppel precludes the AGE assignment, and the AGE assignment is too indefinite to be enforceable.   Defendants Big Star Gathering Ltd L.L.P. and Saint James Energy Operating, Inc.'s Motion to Dismiss or, in the Alternative, Motion for More Definite Statement, Docket Entry No. 44, pp. 6-15.   Because the court concludes that the assignments are void under Texas law, the court does not reach these arguments arising from the AGE bankruptcy.

Transportation, High Sierra, and Superior Crude argue that PEP
lacks standing to assert the indirect, assigned claims that it has
alleged in this action because Texas law prohibits AGE, Flint
Hills, and Valero from assigning any contribution rights against
non-settling defendants.[33]

In Beech Aircraft, 739 S.W.2d at 20, three settling defendants
tried to bring post-settlement counterclaims for contribution
against the remaining non-settling defendant.  The Texas Supreme
Court held that "a defendant can settle only his proportionate
share of common liability and cannot preserve contribution rights
under either the common law or the comparative negligence statute
by attempting to settle the plaintiff's entire claim."  Id. at 22.
Under well-established Texas law, therefore, a settling tortfeasor
is not entitled to contribution from a non-settling tortfeasor.
See Jackson, 938 F.3d at 41-42 (examining Texas case law holding

---

[33]See Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry
No. 12, p. 10; Defendants Shell Trading US Company and Shell
Chemical LP's Motion to Dismiss, Docket Entry No. 31, pp. 10-12;
Memorandum of Law in Support of Defendant Murphy Energy
Corporation's Motion to Dismiss Original Complaint, Docket Entry
No. 37, pp. 9-11; Defendant F&M Transportation, Inc.'s Motion to
Dismiss, Docket Entry No. 66, p. 2 (arguing that PEP has no
standing to bring the assigned claims because the assignments are
invalid and joining the motions to dismiss filed by all other
defendants); Defendant High Sierra Crude Oil & Marketing, LLC's
Motion to Dismiss, Docket Entry No. 76, pp. 2-3 (arguing that PEP
has no standing to bring the assigned claims because the
assignments are invalid and joining the motions to dismiss filed by
all other defendants); Defendant Superior Crude Gathering, Inc.'s
Motion to Dismiss, Docket Entry No. 77, pp. 2-3 (arguing that PEP
has no standing to bring the assigned claims because the
assignments are invalid and joining the motions to dismiss filed by
all other defendants).

that a settling tortfeasor has no right of contribution against a non-settling tortfeasor).

Jackson, 938 F.3d at 40, was a Fifth Circuit products liability death action that followed the death of Jackson, a truck driver whose gasoline tanker hit a cow and burst into flames. Trailmaster, the manufacturer of the gasoline trailer, settled with Jackson's surviving beneficiaries and assigned to them its rights of contribution and indemnity against Betts, the third-party defendant who manufactured a part attached to the trailer.  The Fifth Circuit held that the assignment from Trailmaster to Jackson's estate was void under Texas law because "it impermissibly s[ought] to preserve the settling defendant's contribution rights against a third-party joint tortfeasor, Betts." Id. at 41-42.  In further support of its holding, the court explained that "the assignment of Trailmaster's contribution claim to the plaintiffs would cause only unnecessary additional litigation, confuse the jury as to the role of these 'surrogate plaintiffs,' prejudice Betts, and possibly result in a prohibited double recovery of the same damages." Id. at 42.

PEP argues that Jackson is distinguishable because the assigned claims in that case were for contribution and indemnity, while the assigned claims at issue here are assigned claims for breach of warranty and breach of contract made pursuant to Texas's version of the Uniform Commercial Code (UCC).  PEP argues that

> [a]lthough PEP was assigned all of relevant claims,
> including for contribution and indemnity (along with

-27-

warranty and contract claims), PEP brought only three claims—breach of warranty, breach of contract, and fraud (against certain defendants).

Analyzed from the perspective of the claims PEP actually raises, there is no question that the assignments are valid.  The defendants that sold stolen goods are liable to Valero, AGE, and Flint Hills directly for breach of warranty of title, not for contribution and indemnity. *See Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977); *Mitchell v. Webb*, 591 S.W.2d 547 (Tex. Civ. App.—Fort Worth 1979, not writ).

Thus, PEP is not trying to concoct a claim in contravention of the common law.  It is raising two claims that could not have better legal support.  In this context—the sale of goods—the UCC controls, and the UCC both creates a claim for breach of contract and states that damage claims for breach of warranty and for contract are freely assignable; indeed, the parties cannot even agree to foreclose such an assignment.  Tex. Bus. & Com. Code § 2.210(b).[34]

PEP's argument that the assigned claims asserted in this action are not claims for contribution or indemnity but, instead, claims for breach of warranty and breach of contract, is belied, however, by the terms of the assignment clauses included in the settlement agreements.  The Flint Hills agreement provides as follows:

a.   Flint Hills assigns to PEP any third party claims, including, but not limited to, claims for contribution or indemnity, breach of warranty of title and breach of contract, Flint Hills has against any third party for the matters covered by the release. . .

---

[34]PEP's Opposition to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 70, pp. 10-11; PEP's Opposition to Shell Chemical LP and Shell Trading US Company's Motion to Dismiss, Docket Entry No. 71, p. 13; PEP's Opposition to Murphy Energy Corporation's Motion to Dismiss, Docket Entry No. 72, pp. 10-11.

    b.    Flint Hills and PEP intend that PEP can utilize the assignments to collect PEP's damages, if any. . .[35]

In pertinent part the AGE and Valero agreements are identically worded.[36] Thus, pursuant to the assignment clauses contained in the settlement agreements, the only claims assigned to PEP are third-party claims that the parties intended PEP to use to collect PEP's damages. By definition, the assigned third-party claims require a finding of liability on the part of AGE, Flint Hills, and/or Valero before their liability can be shifted to a third-party. See Black's Law Dictionary 34 (8th ed. 2004) (defining "third - party action" as "[a]n action brought as part of a lawsuit already pending but distinct from the main claim, whereby a defendant sues an entity not sued by the plaintiff when that entity may be liable to the defendant for all or part of the plaintiff's claim").

Like Trailmaster, the settling manufacturer of the gasoline trailer in Jackson, 938 F.2d at 40, who impermissibly attempted to preserve its contribution rights against its alleged joint tortfeasors by assigning its third-party claims to the decedent truck driver's beneficiaries, AGE, Valero, and Flint Hills have impermissibly attempted to preserve their contribution rights

---

[35]Flint Hills/PEP Settlement Agreement, Exhibit D to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31, p. 2 ¶¶ 8.a and 8.b.

[36]See AGE/PEP Settlement Agreement, Exhibit B to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31, p. 2 ¶¶ 8.a and 8.b; Valero/PEP/PR Settlement Agreement, Exhibit 1 to Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 12, ¶¶ 9.a and 9.b.

against their alleged joint tortfeasors by assigning their third-party claims to PEP.    Although PEP's Original Complaint characterizes the assigned claims as claims for breach of contract and breach of warranty, the claims that PEP seeks to assert as assignee of AGE, Flint Hills, and Valero are derivative of the causes of action PEP has asserted in this lawsuit and are, therefore, actually third-party claims for contribution and indemnity.  PEP acknowledged this in the joint motion for approval of the AGE settlement agreement filed in bankruptcy court:

> PEP has alleged that potential claims exist against AGE by PEP for at least $90 to $100 million dollars and possibly as much as $120 million dollars.  As the seller had no title to pass to AGE, AGE is allegedly not able to avail itself of any sort of "good faith" purchaser or bona fide purchaser for value type defense.
>
> In turn, <u>AGE would have a claim for recourse against the seller(s) of this stolen crude if it were found liable to PEP</u>.  However, since AGE, at this point, has not suffered any damages, such claim is currently not ripe for assertion.[37]

Because the assigned claims asserted in this action are all contingent upon PEP's ability to hold AGE, Flint Hills, and Valero liable for having purchased and/or received stolen gas condensate, the assigned claims are claims for contribution from non-settling tortfeasors that are invalid under Texas law regardless of how they are characterized in PEP's pleadings.  See <u>Jackson</u>, 938 F.3d at 40. See also <u>Garland Dollar General LLC v. Reeves Development, LLC</u>,

---

[37]Joint Motion Under Bankruptcy Rule 9019 to Approve Settlement Agreement Pemex Exploración y Producción, Exhibit A to Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31, p. 4, ¶¶ 12-13 (emphasis added).

Civil Action No. 3:09-CV-0707-D, 2010 WL 1962560, *3 (N.D. Tex. May 17, 2010) ("Reeves Development cannot bring a contribution claim framed as an action for breach of contract.").

        (b)  Assignments Are Invalid Because They Increase and Distort Litigation

Citing State Farm Fire and Casualty Company v. Gandy, 925 S.W.2d 696 (Tex. 1996), defendants Plains, STUSCO, Murphy Energy, F&M Transportation, High Sierra, and Superior Crude argue that PEP lacks standing to assert the assigned claims because the assignments are void under Texas law as against public policy.[38] Plains explains that

> PEP's only basis for standing to bring claims against Plains on behalf of Valero and AGE is an assignment of those claims. These purported assignments—in which PEP settled its conversion claims against Valero and AGE for $0 in return for an assignment of their warranty

---

[38]See Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 12, p. 10; Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss, Docket Entry No. 31, pp. 11-12; Memorandum of Law in Support of Defendant Murphy Energy Corporation's Motion to Dismiss Original Complaint, Docket Entry No. 37, pp. 9-11; Defendant F&M Transportation, Inc.'s Motion to Dismiss, Docket Entry No. 66, p. 2 (arguing that PEP has no standing to bring the assigned claims because the assignments are invalid and joining the motions to dismiss filed by all other defendants); Defendant High Sierra Crude Oil & Marketing, LLC's Motion to Dismiss, Docket Entry No. 76, pp. 2-3 (arguing that PEP has no standing to bring the assigned claims because the assignments are invalid and joining the motions to dismiss filed by all other defendants); Defendant Superior Crude Gathering, Inc.'s Motion to Dismiss, Docket Entry No. 77, pp. 2-3 (arguing that PEP has no standing to bring the assigned claims because the assignments are invalid and joining the motions to dismiss filed by all other defendants).

claims—are invalid under Texas law because they are collusive and distort the litigation.[39]

In Gandy the Texas Supreme Court considered and found impermissible a settlement agreement and assignment similar to the settlements and assignments at issue in this action.  Gandy sued her stepfather for sexual abuse, and State Farm, his insurer, agreed to undertake his defense while reserving its right to deny coverage.  The stepfather settled with Gandy for an agreed judgment of $6 million and assigned all his claims against State Farm both for coverage and for negligent defense to Gandy, and Gandy agreed not to collect from her stepfather but, instead, to pursue the assigned claims against State Farm.  Id. at 697-98.  Gandy then sued State Farm in a new lawsuit, and State Farm argued that the assignment of claims was invalid as against public policy.  The court of appeals agreed in principle, stating that the assignment should effectively be void because the agreement not to execute against the stepfather meant that the stepfather had not suffered any damages from Gandy's tort claims against him, and could not therefore collect on a claim against State Farm.  Nevertheless, the court of appeals reasoning that since State Farm had voluntarily agreed to defend the stepfather, State Farm had a duty to conduct the defense properly.  Id. at 698.

The Texas Supreme Court reversed, holding that the stepfather's assignment of claims to Gandy violated public policy

---

[39]Plains Marketing, L.P.'s Motion to Dismiss, Docket Entry No. 12, p. 11.

and, therefore, conveyed nothing.  Id.  The Court cited four instances in which Texas courts have held agreements to assign claims invalid:  (1) assignment of legal malpractice claims, id. at 707-08; (2) Mary Carter agreements, whereby a plaintiff assigns to a settling defendant part of his claims against any nonsettling defendants, id. at 709-10; (3) assignment of a plaintiff's claim to a tortfeasor as part of a settlement agreement, which allows the settling defendant to prosecute the claim against a joint tortfeasor, id. at 710-11; and (4) assignment of interests in an estate, id. at 711.  The Court observed that these instances show that "[i]n widely different contexts we have invalidated assignments of choses in action that tend to increase and distort litigation.  We have never upheld assignments in the face of those concerns."  Id.

Observing that the stepfather's settlement with Gandy not only prolonged the litigation but also "greatly distorted the litigation that followed [the settlement]," id. at 712, the Court concluded that Gandy and her stepfather had perpetrated a fraud against State Farm by trying to hold it liable for damages for which it would not have been liable had the case proceeded to trial against the stepfather.  Id. at 712-13.  The Court explained that

> [w]hile the courts favor settlement of disputes and incline to enforcing parties' agreements toward that end, we do not do so when, as with Mary Carter agreements, the result is worse than if the parties had not settled.  The settlement arrangement in the present case did not resolve the parties' disputes but prolonged and confused them.  Such an arrangement is invalid.

Id. at 714.

Citing H.S.M. Acquisitions v. West, 917 S.W.2d 872 (Tex. App. — Corpus Christi 1996, writ denied), the Gandy Court acknowledged that settlement arrangements like the one at issue in Gandy are not confined to insurance cases but are also used in other contexts. The Court explained that in the H.S.M. Acquisitions case

> a lessor sued her lessee for breach of a building lease. The lessee in turn sued its sublessees, contending that they were liable for all of lessor's claims. When mounting litigation costs began to concern lessee, it settled with lessor by assigning lessor its claims against the sublessees and agreeing to a substantial judgment in lessor's favor in exchange for lessor's agreement not to enforce the judgment against lessee and to indemnify lessee against claims by the sublessees. Lessor then sued the sublessees to collect its judgment against lessee. The sublessees filed third party claims against lessee. The trial court granted summary judgment for the sublessees, refusing to enforce the settlement agreement because it was collusive. Id. at 874-75. The court of appeals affirmed [stating]:
>
>> We hold that the agreed judgment between [lessee] and [lessor] was executed in bad faith and is against public policy. Public policy favors reducing litigation and properly aligning adverse parties. [Lessee's] settlement with [lessor] failed to achieve these goals. Instead of reducing litigation, the settlement prolonged and confused the litigation. Rather than encouraging settlement, [lessee's] and [lessor's] actions did just the opposite . . . We conclude that the agreed judgment increased the complexity of the litigation, unduly distorted the posture of the litigation, and misaligned the parties by placing [lessee] on the same side as [lessor]. Id. at 881.
>
> We agree with the court of appeals. The same reasons for invalidating the assignment in the present case apply in H.S.M. The factor weighing in favor of upholding an assignment in cases involving insurance — the insured's expectation that his insurer will provide

> a defense against plaintiff's claim — does not exist in
> a case like *H.S.M.* Absent such a countervailing factor,
> there is no reason to allow an assignment that makes
> litigation more protracted and complex.

Gandy, 925 S.W.2d at 715. Because, like the settlement agreements
found invalid in Gandy and H.S.M. Acquisitions, the settlement
agreements that AGE, Flint Hills, and Valero entered with PEP
increase the complexity of the litigation and misalign the parties
by placing AGE, Flint Hills, and Valero on the same side as PEP,
the court concludes that the assignments are invalid.

Like the settlement agreements at issue in Gandy and H.S.M.
Acquisitions, the settlement agreements that AGE, Flint Hills, and
Valero entered with PEP did not end any litigation and offered no
reasonable expectation of ending any litigation.  The agreements
that PEP entered with all three assignors show that they were not
intended to secure damages from AGE, Flint Hills, or Valero but,
instead, were intended to provide PEP a way to recover against the
defendants named in this action.  Like the stepfather in Gandy and
the lessee in H.S.M. Acquisitions who suffered no damages because
plaintiffs in those cases agreed not to enforce the judgments that
they obtained against the settling defendants, AGE, Flint Hills,
and Valero have not suffered any damages because PEP, the only
party that could claim superior title to the gas condensate, has
agreed not to pursue liability claims against them, and not to
enforce their promises to reimburse PEP for any stolen gas
condensate they purchased and/or received.  PEP's covenants not to
seek to hold AGE, Flint Hills, or Valero liable for having

purchased and/or received stolen gas condensate and not to enforce their promises to reimburse PEP are, therefore, analogous to the agreements at issue in Gandy and H.S.M. Acquisitions. Moreover, the assignments at issue in this case put PEP into a dual role as both the alleged original owner of the gas condensate at issue and the last purchaser of that gas condensate. The dual role that the assignments require PEP to play in this litigation threatens to confuse the jury as to whose damages should be considered and raises the possibility that PEP could receive a prohibited double recovery of the same damages if it is successful in this action and in the BASF suit. See Jackson, 938 F.2d at 42.

The court concludes that like the settlements and agreed judgments at issue in Gandy and H.S.M. Acquisitions, the settlement agreements and assignments of claims at issue in this action are invalid because they did not and were not intended to end any litigation but were instead intended to prolong PEP's litigation against the defendants named in this action and because they have distorted the litigation positions of the parties by placing PEP in the dual role of original owner and last purchaser of the gas condensate alleged to have been stolen.

### III. Motions for Leave to Designate Responsible Third Parties

All of the defendants have filed motions to designate responsible third parties pursuant to §§ 33.004(a) and (j) of the Texas Civil Practices and Remedies Code. Because the only claims asserted against the following defendants are indirect, assigned

-36-

claims that the court has already concluded PEP lacks standing to assert, the motions to designate responsible third parties urged by these defendants are moot: Plains (Docket Entry No. 121), Superior Crude (Docket Entry No. 124), High Sierra (Docket Entry No. 125), Murphy (Docket Entry No. 129), F&M Transportation (Docket Entry No. 130), and Big Star and Saint James (Docket Entry No. 132). Because PEP has alleged both direct and indirect, assigned claims against STUSCO, the motion to designate responsible third-parties urged by STUSCO and Shell Chemical is moot as to the indirect, assigned claims and live as to the direct claims. Accordingly, the live motions to designate responsible third parties are those urged by FR Midstream (Docket Entry No. 120), Shell Chemical and STUSCO (Docket Entry No. 123), and Sunoco, ConocoPhillips, and Marathon (Docket Entry No. 127).

## A.   Standard of Review

Defendants seek leave to designate responsible third parties under the Texas proportionate responsibility scheme contained in Chapter 33 of the Texas Civil Practices and Remedies Code.  With certain express exceptions not relevant here, Chapter 33 applies to all common law torts and to statutory torts that do not include a separate and conflicting legislative fault-allocation scheme.  Tex. Civ. Prac. & Rem. Code § 33.002; JCW Electronics, Inc. v. Garza, 257 S.W.3d 701, 704-06 (Tex. 2008).

> "Responsible third party" means any person who is alleged
> to have caused or contributed to causing in any way the
> harm for which recovery of damages is sought, whether by

negligent act or omission, by any defective or
unreasonably dangerous product, by other conduct or
activity that violates an applicable legal standard, or
by any combination of these.  The term "responsible third
party" does not include a seller eligible for indemnity
under Section 82.002.

Tex. Civ. Prac. & Rem. Code § 33.011(6).  Responsible third parties

are not limited to those who can be joined as parties to the

litigation.  Responsible third parties may be persons or entities

outside the court's jurisdiction, unable to be sued by the

plaintiff, or even unknown.  See In re Unitec Elevator Services

Co., 178 S.W.3d 53, 58 n.5 (Tex. App. -- Houston [1st Dist.] 2005,

no pet.).  See also Tex. Civ. Prac. & Rem. Code §§ 33.004(j)-(k).[40]

---

[40]Sections 33.004(j) and (k) of the Texas Civil Practices and
Remedies Code provide:

   (j) Notwithstanding any other provision of this section,
   if, not later than 60 days after the filing of the
   defendant's original answer, the defendant alleges in an
   answer filed with the court that an unknown person
   committed a criminal act that was a cause of the loss or
   injury that is the subject of the lawsuit, the court
   shall grant a motion for leave to designate the unknown
   person as a responsible third party if:

      (1) the court determines that the defendant has
      pleaded facts sufficient for the court to determine
      that there is a reasonable probability that the act
      of the unknown person was criminal;

      (2) the defendant has stated in the answer all
      identifying characteristics of the unknown person,
      known at the time of the answer; and

      (3) the allegation satisfies the pleading
      requirements of the Texas Rules of Civil Procedure.

   (k) An unknown person designated as a responsible third
   party under Subsection (j) is denominated as "Jane Doe"
   or "John Doe" until the person's identity is known.

If a court gives leave to designate a responsible third party, and there is evidence sufficient to submit a question to the jury regarding the conduct of the party, the trier of fact determines the percentage of responsibility of the claimants, defendants, settling persons, if any, and any responsible third parties. Tex. Civ. Prac. & Rem. Code § 33.003(a)(4).

Once a defendant has moved for leave to designate responsible third parties plaintiffs may object. Tex. Civ. Prac. & Rem. Code § 33.004(f). To successfully prevent designation of a responsible third party, the burden is on the plaintiffs to establish that "(1) the defendant did not plead sufficient facts concerning the alleged responsibility of the [third party] to satisfy the pleading requirement of the Texas Rules of Civil Procedure; and (2) after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility. . ." Tex. Civ. Prac. & Rem. Code § 33.004(g).

A court's grant of a motion for leave to designate a responsible third party at this stage in the litigation does not preclude a party from later challenging the designation. After adequate time for discovery, "a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage." Tex. Civ. Prac. & Rem. Code § 33.004(l). "The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise

a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage." Id.  The burden is on the defendants to produce sufficient evidence to raise a genuine issue of fact regarding the designated party's responsibility for the claimant's injury or damage.  Additionally, before trial the court must determine whether there is sufficient evidence to support the submission of a question to the jury regarding the designated party's responsibility.  Tex. Civ. Prac. & Rem. Code § 33.003(b).[41]  Therefore, while the pleading requirements at the outset are not stringent, as trial moves closer the requirement for sufficient evidence to support the actual submission of a question on the responsibility of the designated third parties becomes more demanding.

**B.  Analysis**

FR Midstream Transport LP seeks to designate as responsible third-parties 106 different entities and/or individuals, 147 Known Traffickers, 48 Known Detainees, and 26 Accused Parties, as well as unspecified numbers of unknown traffickers, criminals, and Mexican government officials and customs agents.  In support of its motion to designate responsible third parties, FR Midstream cites PEP documents, documents from the Mexican government, PEP's witnesses,

---

[41]Section 33.003(b) of the Texas Civil Practices and Remedies Code provides:  "This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission."

PEP's disclosures, as well as pleadings and discovery materials from the BASF litigation, Civil Action No. 4:12-cv-1997.[42]

Shell Chemical and STUSCO seek to designate as responsible third-parties 106 different entities and/or individuals, as well as unspecified numbers of known and unknown traffickers, unknown criminals, and unknown Mexican government officials and customs agents.  In support of their motion to designate responsible third-parties, Shell Chemical and STUSCO cite "PEP's Complaints in this case and the BASF case, documents produced by PEP and other Pemex documents, documents produced by Defendants and third parties, reports and documents from the Mexican government, and PEP and other witnesses' testimony."[43]  Shell Chemical and STUSCO argue that its motion to designate responsible third parties should be granted because

> [a]s PEP admits in its pleadings, disclosures, and interrogatory responses in this case and the BASF case and as identified by witnesses and in documents produced by PEP, Defendants, and third parties, the alleged injuries for which [PEP] seeks damages, if proven, were caused by the criminal and/or negligent acts of these responsible third parties.[44]

Sunoco, ConocoPhillips, and Marathon seek to designate as responsible third-parties PEP and its other subsidiaries, as well

---

[42]Defendant FR Midstream Transport, LP's Motion for Leave to Designate Responsible Third Parties, Docket Entry No. 120.

[43]Defendants Shell Chemical LP and Shell Trading US Company's Motion for Leave to Designate Responsible Third Parties, Docket Entry No. 123, p. 3.

[44]Id. at 17.

as various third-parties alleged to have stolen, smuggled, transported, distributed, bought and/or sold Mexican condensate or conspired to undertake such actions named in PEP's pleadings in this case and the consolidated actions, PEP's Rule 26 initial disclosures, interrogatory responses, and document productions, five United States citizens who committed criminal acts (Arnoldo Maldonado, Jonathan Dappen, Donald Schroeder, Stephen Pechenik, and Tim Brink), and an unspecified number of unknown criminals and traffickers.  In support of their motion to designate responsible third parties, Sunoco, ConocoPhillips, and Marathon argue that

> [d]efendants derive their list from various sources, including but not limited to: PEP's pleadings and Rule 26 Initial Disclosures; document productions and discovery responses from PEP, various defendants, and other third parties; reports and documents from the Mexican government; and deposition testimony taken from PEP and other witnesses.[45]

Sunoco, ConocoPhillips, and Marathon explain that

> PEP has already identified *hundreds* of individuals and entities that allegedly played a role in the conspiracy to steal, smuggle, transport, distribute, and/or sell the condensate on both sides of the border.  Discovery productions and deposition testimony have further revealed the names of additional parties that, according to PEP, either knowingly or unknowingly dealt in stolen condensate.  Because all of these non-defendant actors are alleged to have caused or contributed to PEP's damages, Defendants are entitled to designate them as responsible third parties.[46]

---

[45]Joint Motion for Leave to Designate Responsible Third Parties, Docket Entry No. 127, p. 3.

[46]Id. at 2.

-42-

PEP argues that the motions to designate responsible third parties should be denied because they each suffer from procedural deficiencies.[47]  PEP argues that

> [d]efendants['] motions do not even attempt to identify third-parties that might arguably be responsible for their illegal conduct.  Instead, the Defendants proffer a list of every criminal entity or individual they can find a reference to, whether or not those parties had anything to do with Defendants' own respective conduct. The Defendants list over 100 individuals and entities and then add catchalls like "Unknown Criminals," "Unknown Mexican Government Officials and Customs Agents," and "Unknown Traffickers." . . As a result, the Defendants' motions are insupportable.[48]

PEP further argues that

> [t]he Defendants have not satisfied the pleading requirements.  Their motions do no identify any acts of third parties that caused them to purchase PEP's property without title.  Nor do their motions indicate in any manner how the acts of third parties caused the damages inflicted by their actions.  The Defendants do not even offer a factual scenario describing how each designated party *could be* responsible for the Defendants' respective purchases of stolen condensate.  Instead, the Defendants want to lay blame on everyone and every party that is acting criminally within Mexico and the U.S.[49]

In addition PEP argues that the

> [d]efendants have improperly requested that the following entities or individuals who are already defendants, cross-defendants, or settling persons in this case be designated: 5. AGE Refining, Inc.; 11. Arnoldo Maldonado; 12. Bio-NU Southwest d/b/a Valley Fuels; 17. Continental Fuels; 22. Donald Schroeder; 47. JAG Energy USA, Inc.; 51. Jonathan Dappen; 53. Joplin Energy, LLC; 55. Josh

---

[47]PEMEX Exploración y Producción's Opposition to Defendants' Motions for Leave to Designate Responsible Third Parties, Docket Entry No. 135, p. 1.

[48]Id. at 2.

[49]Id. at 3.

Crescenzi; 83. RGV Energy Partners, LLC; 96. Stephen Pechenik; 100. Timothy Brink; and 101. Trammo Petroleum, Inc.[50]

PEP's argument that the pending motions are deficient because they do not demonstrate how the parties they seek to designate as responsible third-parties caused FR Midstream, Shell Chemical and STUSCO, Sunoco, ConocoPhillips, and Marathon to purchase stolen gas condensate lacks merit because Chapter 33 of the Texas Civil Practices & Remedies Code § 33.011(6) defines "[r]esponsible third party" as "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought."  Accordingly, defendants only need to plead facts capable of showing how the third-parties they seek to designate as responsible third-parties caused or contributed to PEP's alleged injury, not to their own conduct.  Defendants allege, and PEP does not deny, that PEP's pleadings, disclosures, and discovery responses identify the parties that they seek to designate as responsible third-parties as parties who caused or contributed to PEP's injuries.  These allegations are sufficient at this early stage of the case to satisfy the pleading requirements for designating responsible third parties.

PEP's contention that the defendants improperly seek to designate as responsible third parties certain individuals who are already defendants, cross-defendants, or settling persons in this case is similarly without merit because none of the named

---

[50]Id.

individuals are defendants, cross-defendants, or settling parties in this action.  Because the court concludes that PEP's arguments that the motions to designate responsible third parties urged by FR Midstream, Shell Chemical and STUSCO, Sunoco, ConocoPhillips, and Marathon should be denied because they suffer from "procedural deficiencies" lack merit, the live motions to designate responsible third parties urged by these defendants will be granted.

## IV.   Conclusions and Order

For the reasons explained in § II, above, the court concludes that PEP lacks standing to assert the indirect, assigned claims for fraud, breach of contract, and breach of warranty alleged in PEP's Original Complaint (Docket Entry No. 1).  Accordingly, Plains Marketing, L.P.'s Motion to Dismiss (Docket Entry No. 12) is **GRANTED**; Defendants Shell Trading US Company and Shell Chemical LP's Motion to Dismiss (Docket Entry No. 31) is **GRANTED in PART and DENIED in PART**; Defendant Murphy Energy Corporation's Motion to Dismiss Original Complaint (Docket Entry No. 36) is **GRANTED**; Defendants Big Star Gathering Ltd. L.L.P. and Saint James Energy Operating, Inc.'s Motion to Dismiss (Docket Entry No. 44) is **GRANTED**; Defendant F&M Transportation, Inc.'s Motion to Dismiss (Docket Entry No. 66) is **GRANTED**; Defendant High Sierra Crude Oil & Marketing, LLC's Motion to Dismiss (Docket Entry No. 76) is **GRANTED**; and Defendant Superior Crude Gathering, Inc.'s Motion to Dismiss (Docket Entry No. 77) is **GRANTED**.

For the reasons explained in § III, above, the court concludes
that the motions to designate responsible third-parties for the
indirect, assigned claims that PEP has asserted against defendants
Plains, Superior Crude, High Sierra, Murphy, F&M Transportation,
and Big Star and Saint James are moot, but that defendants FR
Midstream, Shell Chemical and STUSCO, and Sunoco, ConocoPhillips,
and Marathon have satisfied the requirements for designating
responsible third parties for the direct claims that PEP has
asserted against them.  Accordingly, Defendant FR Midstream
Transport, LP's Motion for Leave to Designate Responsible Third
Parties (Docket Entry No. 120) is **GRANTED**; Plains Marketing, L.P.'s
Motion for Leave to Designate Responsible Third Parties (Docket
Entry No. 121) is **MOOT**; Defendants Shell Chemical LP and Shell
Trading US Company's Motion for Leave to Designate Responsible
Third Parties (Docket Entry No. 123) is **GRANTED** as to PEP's direct
claims for conversion and for equitable relief, constructive trust,
unjust enrichment, money had and received, and is **MOOT** as to PEP's
indirect, assigned claims for fraud, breach of contract, and breach
of warranty; Defendant Superior Crude Gathering, Inc.'s Motion to
Join in Defendants Shell Chemical LP and Shell Trading US Company's
Motion for Leave to Designate Responsible Third Parties (Docket
Entry No. 124) is **MOOT**; High Sierra Crude Oil & Marketing, LLC's
Motion to Join Defendants Shell Chemical LP and Shell Trading US
Company's Motion for Leave to Designate Responsible Third Parties
(Docket Entry No. 125) is **MOOT**; Joint Motion for Leave to Designate

Responsible Third Parties filed by Sunoco Partners Marketing & Terminals L.P., ConocoPhillips Co., and Marathon Petroleum Co., L.P. (Docket Entry No. 127) is **GRANTED**; Defendant Murphy Energy Corporation's Motion to Join the Shell Defendants' Motion for Leave to Designate Responsible Third Parties (Docket Entry No. 129) is **MOOT**; Defendant F&M Transportation, Inc.'s Motion for Leave to Designate Responsible Third Parties and Motion to Join in Defendants Shell Chemical LP and Shell Trading US Company's Motion for Leave to Designate Responsible Third Parties (Docket Entry No. 130) is **MOOT**; and Defendants Big Star Gathering Ltd., LLP and Saint James Operating, Inc.'s Motion to Join in Plains Marketing, L.P.'s Motion for Leave to Designate Responsible Third Parties (Docket Entry No. 132) is **MOOT**.

   **SIGNED** at Houston, Texas, on this the 11th day of February, 2013.

                                 SIM LAKE
                    UNITED STATES DISTRICT JUDGE